IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**TRUSTEES OF CENTRAL LABORERS'**
**PENSION, WELFARE & ANNUITY FUNDS,**

    **Plaintiff,**

v.

**GERALD J. LEPINSKI, JR., d/b/a**
**LAKEVIEW CONSTRUCTION, LLC,**

    **Defendant.**                              Case No. 07-cv-14-DRH

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

    After the Clerk's entry of default was issued against Defendant (Doc. 8), Plaintiff filed its Motion for Entry of Default Judgment (Doc. 12), made pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 55(b)**. Reviewing Plaintiff's Motion, the Court found several evidentiary shortcomings that prevented it from awarding the amount Plaintiff sought to recover against Defendant in default. In response, the Court issued an Order (Doc. 13) directing Plaintiff to file a Supplement in order to provide the necessary evidentiary support to its claims of Defendant's indebtedness. Specifically, Plaintiff claims Defendant is indebted to it in the amount of $4,957.30, a sum total representing $3,430.27 in delinquent fund contributions, $343.03 in liquidated damages and $1,184.00 in audit costs (Doc. 12, Ex. A - Affidavit of Dan Koeppel, ¶ 2). Further, Plaintiff seeks reimbursement of its accrued attorneys' fees

in the amount of $3,051.00 and $895.38 in expended court costs (Doc. 12, Ex. B - Affidavit of Randy Patchett, ¶¶ 3 & 4). Thus, Plaintiff seeks a default judgment against Defendant in the total amount of $8,903.68 (Doc. 12, p. 2). Per the Court's direction, Plaintiff filed the Supplement (Doc. 16), offering up additional evidentiary items to support the amount it claims it is owed by Defendant. The Court will now take these supplementary exhibits into consideration.

When seeking a default judgment pursuant to **Rule 55**, Plaintiff must establish a right to the requested relief sought. ***In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)**. Allegations within the complaint regarding damages are not deemed true upon the rendering of a default judgment. ***Id.* (citations omitted);** ***Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (citations omitted)**. Instead, the district court must determine with reasonable certainty the proper amount to award as damages to the prevailing party. ***Id.*** Such determination can be made either based upon an evidentiary hearing or from "definite figures contained in the documentary evidence or in detailed affidavits." ***Dundee Cement Co.*, 722 F.2d at 1323 (citations omitted);** *see also* ***In re Catt*, 368 F.3d at 793**.

Essentially, Plaintiff (hereinafter also referred to as the "Funds") claims that Defendant, as an employer of certain laborers represented by unions affiliated with the Funds, agreed to participate in the Funds in order to obtain health and welfare benefits for its represented employees (Doc. 2, ¶ 3). This agreement included

Defendant's obligation to timely submit contributions to the Funds (*Id*. at ¶ 4) and to submit to an audit of its payroll books and records, conducted by the Funds' representatives (*Id*. at ¶ 5). Additionally, Plaintiff alleges that Defendant is subject to the Agreement and Declarations of Trust which governs the administration of the Funds (*Id*.), and is liable for reasonable attorneys' fees, court costs, audit costs, liquidated damages and other reasonable expenses incurred by the Funds in relation to any collection action for delinquent contributions (*Id*. at ¶ 11). This suit stems from the Plaintiff's allegations that despite its requests for full performance, Defendant has failed and/or refused to fulfill these obligations to the Funds (*Id*. at ¶ 7). **<u>Defendant's Obligation to Contribute to the Funds</u>**

Initially, the Court first noted that the record failed to show how Defendant was actually obligated to the Funds. Plaintiff had attached, as Exhibit 1 to its Complaint, a copy of the Agreement and Declaration of Trust of the Central Laborers' Pension Funds (the "Funds Agreement"), which governs the formation, operation and administration of the Funds itself. The Funds Agreement explains that the Funds were created for the purpose of providing pensions to employees whose employers have entered into an agreement with a union, thereby obligating the employer to make contributions to the Funds (Doc. 2, Ex. 1, p. 2). "Union" is defined in the Funds Agreement as "[s]uch representative of the Laborers' International Union of North America and its District Councils that may enter into Collective Bargaining Agreements or written agreements requiring contributions to this Trust" (Doc. 2, Ex. 1, p. 4), Yet, the Funds Agreement fell short of showing a

direct contract between the Funds and Defendant.

In its Supplement, Plaintiff now submits copies of two Agreements serving to evidence how Defendant is obligated to the Funds. Exhibit C to the Supplement is an agreement between the Illinois Laborers' District Council and the Southern Illinois Builders Association (affiliated with the Laborers International Union of North America), covering "Building Construction in Highway District #7 and #9" for the period of April 1, 2003 through May 6, 2008 (Doc. 16, Ex. C, cover page and Art. 1, § 1). This agreement obligates each Employer to contribute to the Funds (Doc. 16, Ex. C, p. 16, Art. 23, § 2). Exhibit D to the Supplement is a Memorandum of Agreement between the Southern Illinois Builders Association and the Southern Illinois Laborers' District Council (affiliated with the Laborers International Union of North America), covering "All Building Work in Areas 7 and 9" for the period of April 1, 1998 through March 31, 2003 (Doc. 16, Ex. D, cover pg. and Art. 1, § 1). This Agreement also obligates each Employer to contribute to the Funds (Doc. 16, Ex. D, p. 13, Art. 23, § 2).

Exhibits 2 and 3 to the Complaint are signature pages, signed by Defendant and a representative from the Southern Illinois Laborers' District Council, showing Defendant's agreement to be bound by the terms of the Memorandum of Agreement, attached as Exhibit C to the Supplement, for the period of April 1, 1998 through March 31, 2003. Therefore, the Court is finally able to find that Defendant was obligated to make contributions to the Funds pursuant to the terms of the Memorandum of Agreement regarding "All Building Work in Areas 7 and 9" for the

period of April 1, 1998 through March 31, 2003. Exhibits 2 and 3 do not, however, indicate Defendant's consent to be bound by the terms of the Memorandum of Agreement, attached as Exhibit D to the Supplement, which covers the time period of April 1, 2003 through May 6, 2008. Therefore, the Court still cannot award any Funds contributions sought for that time frame, as there remains nothing showing Defendant's agreement to pay to the Funds for any time after March 31, 2003.

**Audit of Defendant's Indebtedness to the Funds**

The second evidentiary shortcoming the Court noted was that there was no documentary evidence to substantiate the amount in damages Plaintiff sought, aside from its own conclusory statements. With its Supplement, Plaintiff has now submitted an audit statement (the "Audit"), showing the amounts and reportable hours due to the Funds by Defendant (Doc. 16, Exs. A & B). The Audit was conducted by an independent accounting firm. As Plaintiff explains in its supplement, the Audit was the result of a previous suit it filed against Defendant in 2004 (hereinafter "Case No. No. 04-cv-4062-JLF"). *See Trustees of Central Laborers' Pension, Welfare & Annuity Funds v. Gerald J. Lepinski, Jr., d/b/a Lakeview Construction, LLC*, Case No. 04-cv-4062-JLF (S.D. Ill. 2004) (Foreman, J.). Plaintiff filed the earlier suit based on Defendant's failure to allow representatives of the Funds to conduct an audit of Defendant's payroll books and records, required as part of its obligations to the Funds (Case No. 04-cv-4062-JLF, Doc. 1), When Defendant failed to respond, Plaintiff was awarded a default judgment, wherein the Court ordered Defendant to submit to an audit by Plaintiff or its

representatives (Case No. 04-cv-4062-JLF, Doc. 8).  Once the Audit was conducted and a definite delinquent contribution amount was determined, Plaintiff thereafter filed the instant suit against Defendant.

The Audit evaluated Defendant's indebtedness to the Funds from the period of February 1, 2001 to January 31, 2002.  Reviewing Exhibits A and B to the Supplement, the Audit records substantiate the total amount of contributions Plaintiff claims that Defendant owes to the Funds: $4,957.30.  This total amount is comprised of $3,430.27 in delinquent fund contributions, $343,03 in liquidated damages and $1,184.00 in audit costs.  Thus, the Court finds Plaintiff is entitled to an award in the amount of $4,957.30, as Defendant was obligated via the Funds Agreement to pay liquidated damages on delinquent payments as well as attorneys' fees and other incurred expenses, including audit costs, if legal action is necessary to assess and collect the delinquent contributions (Doc. 1, Ex. A, pp. 20 -21, Art. IV, §§ 2 & 10).

**Plaintiff's Attorneys' Fees and Costs**

As a final matter in its previous Order, in considering Plaintiff's request for a default judgment, the Court found that Plaintiff's request for attorneys' fees and costs was not properly substantiated even though supported by its counsel's affidavit, as there were no records showing a reasonable itemization of the attorney hours worked on the matter (generally provided by billing statements) or by receipts for the costs incurred.  With its supplement, Plaintiff has submitted billing statements for attorneys' fees and costs incurred not only in this suit, but those incurred in the

previous suit, Case No. 04-cv-4062-JLF, in which Plaintiff obtained a default judgment against Defendant. In total, Plaintiff seeks attorneys' fees and costs in the amount of $3,946.38, representing $2,942.00 in fees and costs incurred by Plaintiff in the previous suit to compel the Audit, Case No. 04-cv-4062-JLF (*see* Doc. 16, Ex. F), and $1,000.38 incurred in the instant suit (*see* Doc. 16, Ex. E).

The hourly rate for Plaintiff's counsel was $90.00, which the Court determines to be a reasonable rate in today's market. Regarding the fees and costs incurred in the instant suit, Plaintiff has submitted not only a spreadsheet showing Plaintiff's account history, but also the individual billing statements submitted by counsel to Plaintiff, describing both the particular work performed and cost incurred (Doc. 16, Ex. E). Reviewing these billing statements, the Court determines the fees and costs to be reasonable and necessary and thus, an award for fees and costs incurred in the instant suit in the amount of $1,000.38 is due.

However, regarding the fees and costs incurred in the previous suit, Case No. 04-cv-4062-JLF, Plaintiff has not submitted any itemized billing statements describing the various work and expenses totaling the $2,942.00 it seeks. Instead, only a spreadsheet showing Plaintiff's account history for the case has been submitted (Doc. 16, Ex. F). Therefore, the Court is unable to determine whether the fees and expenses Plaintiff incurred from Case No. 04-cv-4062-JLF were reasonable and necessary.

The Court finds it is proper to award Plaintiff $4,957.30, representing the amount of delinquent contributions owed by Defendant to the Funds, along with

associated fees and costs. The Court also finds Plaintiff is entitled to its attorneys' fees in the amount of $1,000.38. As for attorneys' fees accrued in Case No. 04-cv-4062-JLF, Plaintiff may again supplement its Motion for Default Judgment with itemized statements reasonably detailing the various work and expenses amounting to the $2,942.00 it seeks from Defendant in reimbursement. Accordingly, the Court will **GRANT** Plaintiff's Motion for Default Judgment (Doc. 12), but will delay from entering the judgment against Defendant until such time as Plaintiff has either timely submitted its second supplement or informed the Court, via filed memorandum, that it does not wish to submit a second supplement. **This second supplement shall be filed by February 29, 2008**. Failure to timely file without requesting an extension of time to file will result in the entry of default judgment for only the amount approved in this Order.

**IT IS SO ORDERED.**

Signed this 29th day of January, 2008

/s/ David R Herndon
**Chief Judge**
**United States District Court**